WERNER v. MURPHY et al.

(Circuit Court, D. New Jersey. March 27, 1894.)

1. RECEIVERS—SUITS BY CREDITORS—FRAUDULENT CONVEYANCES.

A creditor of a New Jersey business corporation cannot maintain, in a federal court, a suit to set aside alleged fraudulent conveyances made by it, when its affairs have been already placed in the hands of a receiver by a New Jersey court; for by the New Jersey statute relating to corporations the receiver is invested with all the rights and equities of creditors, and he, only, can enforce them. Nor will his mere refusal to act authorize the creditor to sue in person, for the statute gives to any person aggrieved by the receiver an appeal to the chancellor who appointed him.

2. SAME—LEAVE OF APPOINTING COURT.

A creditor of a business corporation which has been placed in the hands of a receiver cannot, without leave of the appointing court, maintain a suit in another court to set aside fraudulent conveyances of the corporate assets.

3. FEDERAL COURTS—CITIZENSHIP—JURISDICTIONAL AMOUNT.

A creditor who has a claim of less than $2,000 against an insolvent corporation, and who sues for himself alone, cannot maintain the suit in a federal circuit court on the ground of diverse citizenship, although he seeks to set aside fraudulent conveyances of corporate assets greatly exceeding $2,000 in value.

This was a suit by Henry Werner against Franklin Murphy, receiver of the Crane-Cahoone-Barnet Company, and others, to set aside alleged fraudulent conveyances, and enforce collection of certain notes made by that company. Defendants demurred.

Frederic W. Ward, for complainant.

Coult & Howell, Guild & Lum, and George W. Hubble, for defendants.

GREEN, District Judge. The complainant, Henry Werner, is an unsecured creditor of the Crane-Cahoone-Barnet Company, a corporation existing under and by virtue of the laws of the state of New Jersey, which on the 23d day of March, 1892, was decreed to be insolvent by the court of chancery of that state, and for which the defendant Franklin Murphy was duly appointed receiver. The complainant alleges in his bill of complaint that he was induced on or about the 18th of February, 1892, by representations made by certain officers of that corporation concerning its solvency, to become the purchaser, for value, of certain promissory notes made by it; that such representations were false, and made with fraudulent intent, and that the company was in fact insolvent at that time; that in view of such insolvency, and with full knowledge of it, the company, on or about the 29th day of February, 1892, made, executed, and delivered, to various persons and corporations named, mortgages covering all its property, to secure an indebtedness of $116,000, and, in addition, made an assignment of all the accounts due to it, to secure the further sum of $31,000. The bill charges that the indebtedness of the company was largely in excess of the value of its assets so mortgaged and assigned, and that the mort-

gages and assignment were made to secure moneys owing to the officers or directors of the company, or to banks which had loaned moneys to the company upon paper for the payment of which, at maturity, its officers or directors were personally liable. The bill further charges that the action of the company in making these mortgages and assignment, and the acceptance thereof by the several defendants, were contrary to law, and, so far as the complainant was concerned, were in fraud of his rights as creditor, and that he is entitled, in equity, to have such mortgages and assignment set aside, as invalid, and that after an accounting by the receiver, and a discovery by all the defendants, in the premises,—which he prays for,—he should be paid, out of the assets of the company remaining in the hands of the receiver, the full amount of his claim. This bill was filed July 21, 1893, after the company had been declared insolvent, and after a receiver had been appointed, and is for the benefit of the complainant alone. To this bill a demurrer has been filed by all the defendants, and for causes therefor they have assigned want of equity, multifariousness, misjoinder of causes of action, and want of jurisdiction in this court. So far as may be necessary, these causes of demurrer will now be considered.

It appears from the bill of complaint that at the time when it was filed there was pending, and undisposed of, in the court of chancery of the state of New Jersey, a suit in which Walter Gracen and William Riker, as partners, were complainants, and the Crane-Cahoone-Barnet Company was defendant, the object of which was to have the defendant decreed to be insolvent, and to have a receiver appointed to wind up its affairs. It is very clear that, if the complainant, in that suit, could obtain the relief he now asks for, the present action must fall. What, then, was the scope of that suit? Based as it was upon the statute of New Jersey entitled "An act concerning corporations," it is to that we must look for an answer; and it is apparent, upon examination, that the act in question is quite broad enough to afford full protection to any creditor of an insolvent corporation who chooses to assert his rights under it. Thus, upon a decree of insolvency against, and the appointment of a receiver for, a corporation, the receiver becomes immediately possessed of the assets of the corporation, holding them in trust for its creditors and stockholders. He is the representative of the creditors, and, as such, has imposed upon him the duty of avoiding any instrument raising an alleged incumbrance which may be void as to them. Button Co. v. Spielmann, 50 N. J. Eq. 120, 24 Atl. 571. He is given full power and authority to demand, sue for, collect, receive, and take into his possession, all rights, credits, and property of every description, belonging to the corporation at the time of its insolvency. He may maintain suit to annul a sale of personal property made in fraud of creditors, or to remove fraudulent liens placed thereon. Miller v. Mackenzie, 29 N. J. Eq. 291. In a word, he stands before the court invested with all the rights and equities of the creditors of the insolvent corporation; and it is his duty,

therefore, to avoid any act of the corporation committed in fraud of those rights and equities. Trust Co. v. Miller, 33 N. J. Eq. 155, 160. Such being the powers and the duties of a receiver, it seems clear that the receiver of the Crane-Cahoone-Barnet Company could have maintained a suit in equity to set aside the mortgages and assignment in question, if such an action on his part were advisable. In fact, it is settled in New Jersey that the receiver is not only the proper party to bring such an action, but is the only party who could maintain it. Minchin v. Bank, 36 N. J. Eq. 439. Nor has a general creditor of an insolvent corporation, after the appointment of a receiver, the right to maintain either a bill for discovery, or settle the validity or priority of claims or incumbrances upon the property of the company, or to inquire into the validity of assignments or transfers of the property thereof. Such duty is imposed upon the receiver, and he, alone, can execute it. Smith v. Falls Co., 4 N. J. Eq. 505. It is quite apparent, then, that the complainant should have taken such action in the suit pending in the court of chancery of New Jersey as would have afforded him the relief he seeks; and, in fact, the complainant states in his bill that he has requested the receiver in that suit to institute proceedings to cause the mortgages and assignment to be vacated and canceled, and the property affected thereby to be recovered, and applied to the payment of his claim, but that the receiver has refused to comply with said request. Beyond this, however, the complainant does not seem to have gone. And yet there is distinct provision made in the New Jersey statute regulating corporations which affords the complainant the redress he desires. Section 82 of the corporation act gives an appeal directly to the chancellor, to any person who feels himself aggrieved by the proceedings or determination of the receiver in the discharge of his duties. If the complainant had chosen, he could have carried his grievance in this matter instantly to the chancellor, and obtained immediate redress. He failed to do this. He had an opportunity to have his day in court. Having declined it, he cannot now seek the aid of another tribunal to accomplish the same purpose.

There is another serious difficulty in sustaining the case of complainant as presented. It is doubtful, from the bill of complaint, whether Mr. Murphy, the receiver of the Crane-Cahoone-Barnet Company, is brought into this court as receiver, or in his individual capacity only.

In either view, the bill cannot be maintained, in its present form. If it be the intention to treat Mr. Murphy individually, and not officially, then it is apparent that there can be no accounting of the assets of the insolvent corporation, for only the receiver of the company can account therefor; and yet it is only after an accounting of those assets that the complainant can have his claim paid and satisfied. If, on the other hand, as the prayer for relief seems to indicate, the intention was to bring Mr. Murphy before this court as a receiver, then this action cannot be permitted to proceed; for it nowhere appears in the record that permission to sue the re-

ceiver has been obtained by the complainant from the court which appointed him, and such permission is a condition precedent to the successful maintenance of this action here. When a court of competent jurisdiction appoints a receiver of the property of a corporation, the court assumes the administration of the estate. The possession of the receiver is the possession of the court, and the court itself administers that estate for the benefit of those whom it shall ultimately adjudge to be entitled to it. It is for that court, in its discretion, to decide whether it will determine for itself all claims of or against the receiver, or will allow them to be litigated elsewhere. No suit can be brought against a receiver without the express permission of the court which appointed him, except in the cases distinctly countenanced by statute. Barton v. Barbour, 104 U. S. 126; Railroad Co. v. Cox, 145 U. S. 601, 12 Sup. Ct. 905; Porter v. Sabin, 149 U. S. 479, 13 Sup. Ct. 1008. As was well said in the case last cited, by Mr. Justice Gray:

"The reasons are yet stronger for not allowing a suit against a receiver appointed by a state court to be maintained, or the administration by the court of the estate in the receiver's hands to be interfered with, by a court of the United States deriving its authority from another government, though exercising jurisdiction over the same territory. The whole property of the corporation within the jurisdiction of the court which appointed the receiver, including all its rights of action, except so far as already lawfully disposed of under orders of that court, remained in its custody, to be administered and distributed by it. Until the administration of the estate has been completed, and the receivership terminated, no court of the one government can, by collateral suit, assume to deal with rights of property or of action constituting part of the estate within the exclusive jurisdiction and control of the courts of the other."

There is still another difficulty in the way of the maintenance of this suit. The complainant, as has been said, is a creditor of the Crane-Cahoone-Barnet Company upon two promissory notes. These notes amount to the sum of $1,489.33, exclusive of interest. The jurisdiction of this court is invoked upon the sole ground of diversity of citizenship of the parties; the allegation being that the complainant is a citizen of New York, while all the defendants are said to be citizens of the state of New Jersey. In such cases the value of the matter in dispute must, in order to confer jurisdiction upon federal courts, exceed the sum of $2,000, exclusive of interest and costs. It is apparent that while the bill of complaint seems to deal with mortgages and assignments of property of much larger value than the statutory limit, in reality the only sum involved in the controversy is the complainant's claim of $1,489.33. If that claim should be paid, this action must fall. The complainant is not acting for the corporation, nor for the stockholders, nor for any creditor other than himself. He is simply seeking the payment of his own claim. That claim, once paid, destroys his entire interest in the controversy. It must be taken, therefore, as the real value of the matter in controversy, and as it is less than the jurisdictional amount the action cannot be maintained. For these reasons the demurrer is sustained.